# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-2017V

| | |
|---|---|
| THERESA CROWELL as executrix of ESTATE OF ERNESTINE IRENE ALLEN,<br><br>　　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>　　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: November 17, 2023 |

*Paul Adrian Green*, Law Office of Paul Green, Pasadena, CA, for Petitioner.

*Sarah Black Rifkin*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On October 13, 2021, Theresa Crowell ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Program"), as executrix of her mother's estate. Petitioner alleged that her mother, Ernestine Irene Allen, received an influenza vaccine on October 14, 2020, and developed Guillain-Barré syndrome, thereafter resulting in her death. Petition at 1.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Asserting that Petitioner had failed to provide *any* evidence that her mother suffered a GBS illness, as alleged, rather than the causes listed on her death certificate (which included COVID-19), Respondent filed a motion to dismiss and Rule 4(c) Report otherwise opposing compensation. ECF Nos. 31-32. In response, Petitioner filed a motion requesting that I dismiss her claim (ECF No. 34), and I granted the motion on April 26, 2023 (ECF No. 35).

On October 25, 2023, Petitioner filed a request for an award of $13,679.00 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees at 9, ECF No. 40. Emphasizing the Petition's filing date – just prior to the expiration of the Vaccine Act's statute of limitation - Petitioner maintains the timing of her mother's symptoms, and her personal observations that her mother's symptoms were indicative of GBS, are sufficient to constitute the good faith and reasonable basis needed for a fees award. *Id.* at 5; *see* Section 15(e)(1) (statutory requirement before a special master may award attorney's fees and costs in non-compensated vaccine cases).

Respondent reacted to Petitioner's motion on November 8, 2023, arguing that "the evidence does not establish a reasonable basis for her claim." Respondent's Opposition to Petitioner's Fee Application ("Opp.") at 17, ECF No. 41. He contends that Petitioner has failed to provide *any* evidence supporting her assertion that her mother's condition met the Table GBS criteria, or that her mother "suffered GBS, or any other injury, that was caused-in-fact by the flu vaccine." *Id.* at 11; *see id.* at 10-14 (Respondent's complete argument). Citing governing Federal Circuit case law, Respondent argues that the looming statute of limitations "is a subjective factor that goes to the good faith inquiry, but it has 'no bearing' on the reasonable basis inquiry at issue here." *Id.* at 15 (quoting *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017)). He also disputes Petitioner's characterization of the proceeding, specifically her claim that she promptly filed her motion to dismiss when it became evident that she lacked the requisite evidence to continue her claim. Opp. at 15 (stressing Petitioner received medical records showing the absence of a GBS diagnosis on October 29, 2021, more than six months before the motion was filed).

On November 15, 2023, Petitioner filed a reply, reiterating her assertion that the claim possessed the requisite reasonable basis due to the timing of the symptoms her mother experienced, which she in good faith perceived as being related to a GBS illness. Petitioner's Reply to Opp. at 4, ECF No. 42. She further contends that her mother's treating physicians "may not have considered or worked up a differential diagnosis of [GBS], which is a very rare condition, particularly at a time when they were overwhelmed with the challenges they faced during the ongoing pandemic." *Id.*

For the reasons discussed below, Petitioner has failed to establish there was a reasonable basis for her claim. Thus, she is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

## I.    Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981,

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

3

at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*), *aff'd without op.*, *slip op.* 22-1737 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.     Analysis

The medical records reveal that, prior to vaccination, Ms. Allen (Petitioner's mother) suffered from common conditions such as high blood pressure and dizzy spells since late 2018. *E.g.,* Exhibit 5 at 18. She received the flu vaccine alleged as causal on October 14, 2020, when 84 years old. Exhibit 6 at 4.

On October 28, 2020 (now two weeks post-vaccination) Ms. Allen visited an urgent care facility, complaining of two weeks of dizziness and an inability to eat. Exhibit 4 at 4. Noted to be suffering from high blood pressure, she was diagnosed with benign paroxysmal positional vertigo. *Id.*

The next day, Petitioner accompanied her mother to the emergency room, stating that Ms. Allen was experiencing dizziness and general weakness for the last week, had

been confused since the previous night, and was not acting normally. Exhibit 3 at 727, 943. She added that Ms. Allen had received a flu vaccine 13 days earlier, developed flu-like symptoms, including a cough, fever, and body aches, last week, and was not eating or drinking much. *Id.* at 727. Hearing "[b]reath sounds with minor crackles in the bilateral lower lung" (*id.*), the ER provider admitted Ms. Allen, ordered testing for cardiac and neurologic issue, COVID, and a urinary tract infection ("UTI"), and prescribed hydration and antibiotics (*id.* at 728). Differential diagnoses included a stroke, UTI, infection, anemia, dehydration, cardiac dysrhythmia, and COVID. *Id.* at 724, 728. After testing positive for COVID, Ms. Allen began oxygen therapy. *Id.* at 616, 907.

Petitioner's mother was transferred to the intensive care unit or ICU on November 1, 2020, and was intubated the next day. Exhibit 3 at 611, 764. She began renal therapy, which was complicated due to *low* blood pressure. *Id.* at 512, 823. Ms. Allen's condition continued to deteriorate, and she suffered cardiac arrest on the morning of November 25, 2020. *Id.* at 68. Her death certificate listed "acute hypoxic respiratory failure" as the primary cause of death with contributing factors of "acute cerebrovascular accident, acute pulmonary embolism, and COVID-19." Exhibit 1 (all letters capitalized in the original). It also noted that Ms. Allen suffered from "end stage renal disease [and] acute coronary syndrome." *Id.*

There is no mention of a possible GBS illness in any of the filed medical records, and it appears such a diagnosis was never considered by Ms. Allen's treating physicians. Despite some overlap related to specific symptoms (such as muscle weakness), Ms. Allen's totality of symptoms were not indicative of GBS. More importantly, her treating physicians clearly did not perceived her as suffering from a GBS illness. And they considered numerous possibilities for Ms. Allen's condition, and even included other conditions and illnesses in her final diagnosis and death certificate. None of the considered illnesses and listed co-morbidities were GBS.

When arguing that this claim possessed the requisite reasonable basis, Petitioner relies upon her *personal belief* that her mother experienced a GBS illness, as well as other subjective factors more appropriate for consideration during a good faith analysis. But the fact that the claim may have been filed in good faith does not cure the significant objective problems with the claim – which are facially evident.

In the recently affirmed *Cottingham* decision, the Court of Federal Claims described the standard of reasonable basis as falling somewhere between the floor of a scintilla of evidence and the ceiling of preponderant proof. *Cottingham II,* 159 Fed. Cl. at 333. Clearly, it is markedly lower than the level of proof required for compensation. In this case, there is only *slight* evidence of appropriate vaccine-related timing – but otherwise *no* objective evidence to support a substantial element of Petitioner's claim (whether

Table or causation-in-fact): that Ms. Allen suffered from GBS.[4] Thus, the case lacked reasonable basis on this element of the claim from the start, prohibiting an award of fees.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing her claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

                              **s/Brian H. Corcoran**
                              Brian H. Corcoran
                              Chief Special Master

---

[4] Petitioner has alleged both a Table GBS injury and causation-in-fact claim. Petition at 1, ¶¶ 2, 8. An initial step in an off-Table claim is to "determine what injury, if any, was supported by the evidence presented in the record." *Lombardi v. Sec'y of Health & Hum. Servs.*, 656 F.3d 1343, 1353 (Fed. Cir. 2011). The Vaccine Act "places the burden on the petitioner to make a showing of at least one defined and recognized injury," and "[i]n the absence of a showing of the very existence of any specific injury[,] ... the question of causation is not reached." *Id.*; *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1346 (Fed. Cir. 2010) (explaining that a vaccine-related injury "has to be more than just a symptom or manifestation of an unknown injury."); *Stillwell v. Sec'y of Health & Hum. Servs.*, 118 Fed. Cl. 47, 56 (2014) ("[I]f the special master finds, as a preliminary matter, that petitioner has failed to substantiate the alleged injury, the special master need not apply the Althen test for causality.").

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.